## UNITED STATES DISTRICT COURT FOR
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEWCHOPS RESTAURANT COMCAST LLC, doing business as Chops**<br><br>                              **Plaintiff,**<br><br>        **vs.**<br><br>**ADMIRAL INDEMNITY COMPANY**<br><br>                              **Defendant.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Newchops Restaurant Comcast LLC, doing business as Chops, brings this Complaint, alleging against Defendant Admiral Indemnity Company as follows:

### I.   NATURE OF THE CASE

1.     This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with the Defendant.

2.     In light of the Coronavirus global pandemic and state and local orders mandating that restaurants not permit in-store dining, Plaintiff shut its doors for customers on March 16, 2020.

3.     Plaintiff's insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4.     As a result, Plaintiff is entitled to declaratory relief that the restaurant is covered for all business losses that have been incurred in an amount greater than $150,000.00.

### II.   JURISDICTION

5.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00.  The amount

in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value those business losses.  *Id.* at § 1332(a).

6.      The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the Commonwealth of Pennsylvania.  At all relevant times Defendant transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the Commonwealth of Pennsylvania, and as a result it is subject to personal jurisdiction in this District.

8.      The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

### III.      PARTIES

9.      At all relevant times, Plaintiff Newchops Restaurant Comcast LLC, doing business as Chops, is a Limited Liability Company authorized to do business and doing business in the Commonwealth of Pennsylvania, County of Philadelphia.  Newchops Restaurant Comcast LLC owns, operates, manages, and/or controls the restaurant Chops located at 1701 JFK Boulevard in Philadelphia, PA 19103.

10.      At all relevant times, Defendant Admiral Indemnity Company is a corporation doing business in the County of Philadelphia, Commonwealth of Pennsylvania, subscribing to Policy Number 21-31769237-33 issued to the Plaintiff for the period of September 8, 2019 to

September 8, 2020.  *See* Policy Declaration page, attached hereto as Exhibit 1.  Defendant is transacting the business of insurance in the Commonwealth of Pennsylvania and within the County of Philadelphia and the basis of this suit arises out of such conduct.

### IV.    FACTUAL BACKGROUND

**A.    Insurance Coverage**

11.    On or about September 8, 2019, Defendant entered into a contract of insurance with the Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for Defendant's promise to indemnify the Plaintiff for losses including, but not limited to, business income losses at its restaurant located in Philadelphia County (the "Insured Property").

12.    The Insured Property consists of Chops located 1701 JFK Boulevard in Philadelphia[1] which is owned, leased by, managed, and/or controlled by the Plaintiff. https://www.chopsphilly.com/ (last visited April 17, 2020).  Prior to March 16, 2020, Chops was open Monday through Friday from 11:30 a.m. through 9:00 p.m., on Saturdays from 5 p.m. through 9 p.m. and closed on Sundays, with the capacity to hold up to 190 guests inside the restaurant and another 60 guests outside, weather permitting.

13.    The Insured Property is covered under a policy issued by the Defendant with policy number believed to be 21-31769237-33 (hereinafter "Policy").

14.    The Policy is currently in full effect, providing, among other things property, business personal property, business income and extra expense, contamination coverage, and additional coverages between the period of September 8, 2019 through September 8, 2020.

---

[1] This address is listed as the Insured Property under the Policy.

15.     Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority.

16.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiffs' Insured Property.  This additional coverage is identified as coverage under "Civil Authority."

17.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

18.     Based on information and belief, the Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown.

19.     The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here.

**B.      The Coronavirus Pandemic**

20.     The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage.  It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the restaurant.

21.     The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three

days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

22.      The CDC has issued a guidance that gatherings of more than 10 people must not occur.  People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23.      The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24.      China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**C.      Civil Authority**

25.      On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth as a result of COVID-19.  *See* Exhibit 2.

26.      On March 16, the City of Philadelphia announced the closure of non-essential businesses, including restaurants like the Plaintiff's.  *See* Exhibit 3; https://www.phila.gov/2020-03-16-city-announces-new-restrictions-on-business-activity-in-philadelphia/ (last visited April 9, 2020).

27.      On March 19, 2020 Governor Wolf issued an Order requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations.  Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control."

*See* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (last visited April 7, 2019).

28. On March 22, 2020, Philadelphia Mayor Jim Kenney issued an Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the Spread of 2019 Novel Coronavirus, ordering the closure of all businesses except those previously listed by the Governor of Pennsylvania as Life-Sustaining Businesses, noting that "COVID-19 may remain viable for hours to days on surfaces made from a variety of materials located in businesses and other places, thus contaminating certain property and places." *See* Exhibit 3.

29. On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. *See* Exhibit 4. On that same date, the Pennsylvania Department of Health issued a similar Order, noting that "operation of non-life-sustaining businesses present the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID–19." *See* Exhibit 5.

30. On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay at Home Order to the entire Commonwealth of Pennsylvania. *See* Exhibit 6.

31. The Pennsylvania Supreme Court recently clarified the Governor's Orders and supported Plaintiff's position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

32. Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their

- 6 -

credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. ***I speak mostly to the restaurateurs***, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

33.    The President is articulating a few core points:

    a.    Business interruption is a common type of insurance, especially for restaurants.

    b.    Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c.    This pandemic should be covered unless there is a specific exclusion for pandemics.

    d.    If insurers deny coverage, they would be acting in bad faith.

34.     These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property.  This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**D.     Impact on Chops**

35.     As a result of the Orders referenced herein, Plaintiff shut its doors to customers on March 16, 2020 and continues to be shutdown.

36.     As a further direct and proximate result of the Orders, Plaintiff has been forced to lay off twenty-five (25) employees.

37.     Plaintiff's business is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the restaurant, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

38.     Restaurants like the Plaintiff's are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to a facility with open-air ventilation.

39.     Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another.

40.     The virus is physically impacting Chops.  Any effort by the Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

41.   A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary.  As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

### V.    CAUSE OF ACTION
### DECLARATORY RELIEF

42.   Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

43.   The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Minder*, No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut. Grp.*, 97 F. Supp. 2d 672 (W.D. Pa. 2000).

44.   An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a.    The Orders constitute a prohibition of access to Plaintiff's Insured Property;

    b.    The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

    c.    The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here.

    d.    The Orders trigger coverage;

    e.    The Policy provides coverage to Plaintiff for any current and future civil authority closures of restaurants in Philadelphia County due to physical loss

or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

f.  The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

g. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

45.   Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

46.   Plaintiff further seeks a Declaratory Judgement to affirm that the Order triggers coverage.

47.   Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of restaurants in Philadelphia County due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

48.   Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Property, amount of damages, or any other remedy other than declaratory relief.

## VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff herein prays as follows:

1)   For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

2)   For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

3)   For a declaration that the Orders trigger coverage under the Policy.

4)      For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of restaurants in Philadelphia County due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5)      For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

6)      For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: April 17, 2020                           Respectfully submitted,


                                                */s/ Richard M. Golomb*
                                                Richard M. Golomb, Esq.
                                                Kenneth J. Grunfeld, Esq.
                                                **GOLOMB & HONIK, P.C.**
                                                1835 Market Street, Suite 2900
                                                Philadelphia, PA 19103
                                                Telephone: (215) 985-9177
                                                Facsimile: (215) 985-4169
                                                rgolomb@golombhonik.com
                                                kgrunfeld@golombhonik.com

                                                Arnold Levin, Esq.
                                                Frederick Longer, Esq.
                                                Daniel Levin, Esq.
                                                **LEVIN SEDRAN & BERMAN, L.L.P.**
                                                510 Walnut Street, Suite 500
                                                Philadelphia, PA 19106-3697
                                                Telephone: (215) 592-1500
                                                alevin@lfsblaw.com
                                                flonger@lfsblaw.com
                                                dlevin@lfsblaw.com

                                                ***Counsel for Plaintiff***