**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ : | | |
| **NEWCHOPS RESTAURANT COMCAST** : | | |
| **LLC, doing business as Chops** : | **No. 2:20-CV-01949-TJS** | |
| : | | |
| **Plaintiff,** : | **CIVIL ACTION** | |
| : | | |
| **v.** : | | |
| : | | |
| **ADMIRAL INDEMNITY COMPANY** : | | |
| : | | |
| **Defendant.** : | | |
| _____ : | | |

_____

**BRIEF IN SUPPORT OF ADMIRAL INDEMNITY COMPANY'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

_____

Eric A. Fitzgerald, Esquire
Attorney ID No.: 72590
Hillary N. Ladov, Esquire
Attorney ID No.: 315833
GOLDBERG SEGALLA LLP
1700 Market Street, Suite 1418
Philadelphia, PA 19103
267-519-6800
efitzgerald@goldbergsegalla.com
hladov@goldbergsegalla.com

Antonia B. Ianniello (pro hac vice pending)
John F. O'Connor (pro hac vice pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
202-429-3000
aianniello@steptoe.com
joconnor@steptoe.com

**Attorneys for Defendant
Admiral Indemnity Company**

## I.      INTRODUCTION

Plaintiff NewChops Restaurant Comcast LLC d/b/a Chops ("NewChops") seeks a declaratory judgment that it is entitled to insurance coverage from Admiral Indemnity Company ("Admiral") for claimed business income losses allegedly caused by the Coronavirus global pandemic and resulting government orders mandating that restaurants not permit in-person dining ("Governmental Orders").  The plain and unambiguous terms of the policy issued by Admiral ("Admiral Policy" or "Policy"), however, provide coverage only for losses caused by direct physical loss of or damage to property and not pure economic losses caused by apprehension of, or efforts to contain, a pandemic.  Nor are the requirements for obtaining Civil Authority coverage otherwise met.   Moreover, even if there were plausible allegations of direct physical damage in the Complaint, which there are not, the Policy broadly excludes from coverage any business income losses caused by or resulting from a virus.  Thus, plaintiff has no legal basis on which to claim coverage from Admiral.

More specifically, there are at least four reasons why plaintiff is not entitled to coverage here.  First and foremost, the Admiral Policy contains an "Exclusion of Loss Due to Virus or Bacteria" that excludes coverage for "loss or damage caused by or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease."  As plaintiff's claims plainly concern alleged loss or damage caused by or resulting from a deadly virus, the exclusion squarely applies and the Court need look no further than its application to dispose of the Complaint.

Second, there can be no coverage under the Civil Authority grant of coverage in the Admiral Policy because the Governmental Orders on which NewChops relies did not "prohibit access" to NewChops's restaurant.  Rather, by the explicit terms of the orders, restaurants like

Chops were allowed to provide take-out and delivery services.  The courts have uniformly held that the prohibition of direct access must be "complete" and "total" for coverage to be triggered.

Third, the elements of Civil Authority coverage are not satisfied in the absence of proof that the orders were issued, *inter alia,* as a result of damage to property within one mile of NewChops's restaurant, as required by the Admiral Policy.  Nowhere in the Governmental Orders is there any allegation that physical damage to property within this radius has occurred as a result of COVID-19.  To the contrary, the Governmental Orders forbid congregation or close contact of individuals, not because of known physical damage to property, but because such measures can mitigate or slow transmission of the disease.

Lastly, plaintiff cannot obtain a declaration of coverage without an actual showing of direct physical loss of or damage – either to its own property or to property within a one-mile radius that gives rise to governmental closure orders.  As to its own property, NewChops consciously avoids this essential pleading element altogether, stating that it "does **not** seek any determination of whether the Coronavirus is physically in or at the Insured Property . . ."  Compl. ¶ 48.  As to damage to property within a one-mile radius, the Complaint is utterly silent.  The lack of plausible allegations of physical damage or loss is fatal to plaintiff's claims.

Accordingly, as a matter of law, NewChops is not entitled to coverage for the business losses alleged in the Complaint.  The Court should enter judgment in Admiral's favor pursuant to Federal Rule of Civil Procedure 12(c).

## II.     STATEMENT OF FACTS

### A.     NewChops's Declaratory Judgment Action

Plaintiff, the owner of the Chops restaurant in Philadelphia, commenced this lawsuit on April 17, 2020 seeking a declaration that it is entitled to insurance coverage under the Admiral

Policy for all "business losses" that it has incurred and will incur as a result of the COVID-19 global pandemic and Governmental Orders requiring closures of certain businesses. Specifically, NewChops alleges that, between March 6 and April 1, 2020, the Governor of Pennsylvania and the Mayor of Philadelphia issued a series of Proclamations and Orders declaring a state of emergency in the Commonwealth as a result of COVID-19 and subsequently requiring partial or full closures of certain businesses in order to mitigate the risk of transmission and community spread of the virus. Compl. ¶¶ 25-30. NewChops claims to have "shut its doors for customers on March 16, 2020." *Id.* ¶ 2.

In its Complaint, NewChops claims, in broad conclusory terms, that the coronavirus is "physically impacting Chops." Comp. ¶ 40. At the same time, however, plaintiff does not contend that its insured property is actually contaminated. To the contrary, plaintiff goes to great pains to note that "Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Property . . . ." Compl. at ¶ 48. Nor does plaintiff point to any property in the one-mile vicinity of Chops that has been physically damaged as a result of COVID-19 or that the Governmental Orders identify any such damage.

Notwithstanding the absence of these critical allegations, NewChops seeks a variety of declaratory relief, geared for the most part to establishing coverage under the Civil Authority provisions of the Admiral Policy. These include declarations that: (1) the Governmental Orders constitute a  "prohibition of access" to plaintiff's insured property within the meaning of the Policy; (2) the prohibition of access "is specifically prohibited access as defined in the Policy;" (3) the Governmental Orders "trigger coverage under the Policy"; and (4) the Policy provides coverage to plaintiff for any "current, future and continued civil authority closures of restaurants in Philadelphia County due to physical loss or damage directly or indirectly from the Coronavirus

under the Civil Authority parameters." Compl., Prayer for Relief. Almost as an afterthought, plaintiff seeks a fifth declaration that: (5) "the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or in the immediate area of the Plaintiff's Insured Property." *Id.*

Although the Complaint fails to identify any form of direct physical loss of or damage to property, it does recount in meticulous detail the various orders and directives issued by the Mayor of Philadelphia and the Governor of Pennsylvania that purportedly shut down plaintiff's restaurant. These orders are singularly based upon efforts to stop or slow the spread of COVID-19:

- "On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth *as a result of COVID-19*." Compl. ¶ 25 (emphasis added). Governor Wolf's Proclamation declares a state of emergency and proclaims that it "is critical to prepare for and respond to suspected or confirmed cases in the Commonwealth and *to implement measures to mitigate the spread of COVID-19*." Compl., Ex. 2 at 1 (emphasis added).

- The Complaint cites to an Internet link to the March 16, 2020 order of Philadelphia Mayor Jim Kenney. Compl. ¶ 26. The order states that certain business closures were required "*in order to reduce the spread of the COVID-19 novel coronavirus* in Philadelphia." The Mayor's order provides that "[f]ood establishments may only accommodate online and phone orders for delivery and pick-up, and cannot allow dine-in service, for the duration of these restrictions."[1]

- The Complaint cites to Governor Wolf's March 19, 2020 order. Compl. ¶ 27. That order states that "[a]ll restaurants and bars previously have been ordered to close their dine-in facilities *to help stop the spread of COVID-19*."[2] The order further provides that "businesses that offer carry-out, delivery, and drive-

_____

[1]    www.phila.gov/2020-03-16-city-announces-new-restrictions-on-business-activity-in-philadelphia/ (emphasis added) (last visited May 30, 2020).

[2] www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (emphasis added) (last visited May 30, 2020).

through food and beverage service may continue, so long as social distancing and other mitigation measures are employed to protect workers and patrons."

- "On March 22, 2020, Philadelphia Mayor Jim Kenney issued an Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons *to Prevent the Spread of 2019 Novel Coronavirus*." Compl. ¶ 28 (emphasis added); *see also* Compl., Ex. 3.  That order allowed Essential Retail Businesses and Activities to remain open, and designated as an Essential Retail Business and Activity, "'Food Services' or restaurants limited to providing delivery service or pre-ordering online or via phone (strictly prohibited are walk-in ordering, dine-in service, and mobile food vendors, such as food trucks)." Compl., Ex. 3.

- The Complaint cites March 23, 2020 orders by Governor Wolf and the Pennsylvania Department of Health requiring quarantine, isolation, and social distancing for certain Pennsylvania counties, but which continued prior exemptions allowing restaurants to remain open for take-out and delivery service.  Compl., Ex. 4 at 2, Ex. 5 at 1.  Governor Wolf justified his order as "*the most efficient and practical means for the prevention and suppression of disease*."  *Id.*, Ex. 4 at 1 (emphasis added).  The Department of Health issued its order "*[t]o protect the public from the spread of Coronavirus (COVID-19)*. *Id.*, Ex. 5 at 1 (emphasis added).

**B.     The Policy**

Admiral issued the Policy to NewChops with a policy period of September 8, 2019 to September 8, 2020.  A copy of the policy attached hereto as Exhibit 1.  The Policy is a Commercial Lines Policy with four coverage parts: (1) Commercial Auto; (2) Commercial General Liability; (3) Commercial Property; and (4) Commercial Umbrella.   Only the Commercial Property Coverage Part of the Policy is implicated in this suit.[3]

---

[3] For the convenience of the Court, the pages of the Policy have been numbered sequentially in the bottom right hand corner.  Citations are to the Policy pages as well as the applicable Policy Forms. Ex. 1 at 57 (Form CSMR 00 30 01 14); *id.* at 3 (Form IL DS 83 00 04 10).

Subject to all of its terms, exclusions and limitations, the Policy provides coverage to plaintiff for the loss of "Business Income" it sustains due to the necessary suspension of its operations, where the suspension is "caused by direct physical loss of or damage to property" at premises described in the Policy. Ex. 1 at 56 (Form CSMR 00 30 01 14). Plaintiff's coverage demands are centered on the "Civil Authority" coverage of the Commercial Property Coverage Part, however, which provides as follows:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Ex.1 at 57 (Form CSMR 00 30 01 14). The "described premises" for purposes of the Civil Authority coverage is the Chops restaurant location.[4]

Taken together, there are four prerequisites that must be satisfied to trigger Civil Authority coverage and compensate plaintiff for its actual loss of Business Income or Extra Expense: (1) a "Covered Cause of Loss" must cause damage to property other than property at the "described" (or insured) premises (here Chops Restaurant); (2) an "action of civil authority" must "prohibit

---

[4] The restaurant is located at 1701 JFK Blvd., Philadelphia, Pennsylvania 19103 and is identified in the Commercial Property Declarations. *See* Ex. 1 at 26 (Form CP DS 83 00 04 10).

access" to the described premises as a result of the damage to nearby property; (3) access to the area immediately surrounding the damaged property must be prohibited by civil authority "as a result of the damage" and the damaged property must be not only within that area but no more than one mile from the described premises; and (4) as relevant here, the action of civil authority must be taken in response to "dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage."  *Id.*[5]

A "Covered Cause of Loss" is defined in the Policy as "Risks of Direct Physical Loss" unless the loss is excluded.  Ex. 1 at 68 (Form CSMR 10 30 01 14).

Importantly, the Policy also contains the Virus Exclusion, which was added as an Endorsement to the Policy.  That exclusion provides in pertinent part as follows:

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

This endorsement modifies insurance provided under the following:

**Commercial Property Coverage Part**
**Standard Property Policy**

A.  The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense **or action of civil authority**.

B.  **We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.**  However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot.  Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

---

[5] The action of civil authority can also be taken to enable a civil authority to have unimpeded access to damaged property.  There is no allegation that the Governmental Orders were issued for this purpose.

Virus Exclusion, Ex.1 at 79 (Form CP 01 40 07 06) (emphasis added).  As noted, the Virus Exclusion applies to all coverage "under all forms and endorsements" that comprise the Commercial Property Coverage Part, including but not limited to forms or endorsements that cover "action of civil authority."

## III.   LEGAL STANDARDS

### A.   Standard for a Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) "is analyzed under the same standards that apply to a Rule 12(b)(6) motion."  *See Wolfington v. Reconstructive Orthopaedics Assocs. II PC,* 935 F. 3d 187, 194 (3d Cir. 2019).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More is required than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nor will courts accept legal conclusions couched as factual allegations to satisfy pleadings requirements.  *Iqbal,* 556 U.S. at 679.  Significantly, courts in this Circuit have not hesitated to grant Rule 12(c) motions in insurance coverage cases, where the insured cannot show any entitlement to relief under any plausible set of facts alleged in the pleadings.  *See Nationwide Mut. Ins. Co. v. Brown*, 226 F. App'x 153, 156 (3d Cir. 2007) (finding policy exclusion barred coverage and granting insurer's Rule 12(c) motion); *Nautilus Ins. Co. v. Shawn Owens Inc.,* 316 F. Supp. 3d 873, 878 (E.D. Pa. 2018).

In ruling on a Rule 12(c) motion, the Court may consider materials not attached to the complaint that are incorporated by reference and are central to the plaintiff's claims.  *Wolfington,* 935 F. 3d at 195 (holding that undisputedly authentic documents may be considered in Rule 12(c) motions if the plaintiff's claims are based upon the documents); *Citisteel USA, Inc. v. Gen. Elec.*

*Co.*, 78 F. App'x 832, 835 (3d Cir. 2003) (same).  This suit rests entirely on NewChops's claims

to insurance coverage under the Admiral Policy, of which only the Declarations Page was attached

to the Complaint.  Accordingly, the Court can consider the entire policy, which is attached in full

to this Memorandum, in ruling on Admiral's Rule 12(c) motion.

### B.        Pennsylvania Law Applies to Construction of the Policy

A federal court presiding over a case based on diversity jurisdiction must apply the choice

of law rules of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

(1941).  Under Pennsylvania's choice of law rules, a contract is construed according to the law of

the state with the "most significant contacts or relationship with the contract."  *Hammersmith v.

TIG Ins. Co.*, 480 F.3d 220, 227-28 (3d Cir. 2007) (quoting *Wilson v. Transport Ins. Co.*, 889 A.2d

563, 571 (Pa. Super. Ct. 2005)).  Admiral issued the Policy to NewChops in Pennsylvania, through

a Pennsylvania broker, and the Policy provides coverage for an insured property located in

Pennsylvania.  Ex. 1 at 26 (Form CP DS 83 00 04 10).  Accordingly, Pennsylvania law governs

construction of the Policy.

Under Pennsylvania law, "[c]ontract interpretation is a question of law that requires the

court to ascertain and give effect to the intent of the contracting parties as embodied in the written

agreement."  *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (citing *Dep't of

Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005)).

When the language of an insurance policy is clear and unambiguous, the court is bound to give

effect to that language.  *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005).

Moreover, policy terms "should be read to avoid ambiguities," *Imperial Cas. & Indem. Co. v. High

Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir. 1988), and courts may not "distort the

meaning of the language or resort to a strained contrivance in order to find an ambiguity."  *Madison*

*Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citing *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982)); *see also Imperial Cas.* 858 F.2d at 128 ("a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy")*.

## IV.    ARGUMENT

The COVID-19 pandemic has wreaked havoc on public health and the economic fortunes of businesses nationwide in unimaginable ways.  But no matter how extensive its reach, and how sympathetic its victims, the pandemic can provide no basis to impose on insurers, like Admiral, obligations for risks they never undertook to write, never collected premium for and, indeed, expressly excluded.  A simple, commonsense reading of the Admiral Policy, starting with the Virus Exclusion but including the panoply of other unmet policy requirements, leads to the inescapable conclusion that there is no coverage, as a matter of law, for NewChops's claims. Judgment should be entered in Admiral's favor under Rule 12(c).

### A.    The Virus Exclusion Bars Coverage

The Virus Exclusion precludes coverage for "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Ex. 1 at 79, ¶ B (Form CP 01 40 07 06).  By its terms, the Virus Exclusion expressly applies to all forms and endorsements that comprise coverages under the Policy's Commercial Property Coverage Part, including "forms or endorsements that cover business income, extra expense ***or action of civil authority***."  *Id.* at ¶ A (emphasis added). Thus, no matter what coverage NewChops seeks, and no matter what theories it advances in support of its claims, the Virus Exclusion forecloses such coverage.

The elements necessary to apply the Virus Exclusion are fully satisfied here.  First, as its name plainly reflects and as plaintiff necessarily concedes, the Coronavirus (COVID-19) is a "virus."  *See, e.g.*, Compl. ¶ 20.  Second, the Complaint also specifically alleges that Coronavirus induces or is capable of inducing physical distress, illness or disease.  NewChops's Complaint correctly alleges that the Coronavirus is "deadly" (Compl. ¶ 23) and the Government Orders NewChops attaches to its Complaint similarly recognize the hazardous nature of COVID-19.  Compl., Ex. 2 at 1 ("COVID-19 is a disease capable of causing severe symptoms or loss of life, particularly to older populations and those individuals with preexisting conditions"); Compl., Ex. 3 at 2 ("COVID-19 can cause severe disease and death, particularly in older adults and other vulnerable populations"); Compl., Exs. 4 & 6 at 1 (COVID-19 is a "public health emergency of international concern."); Compl., Ex. 5 at 2 ("COVID-19 is a threat to the public's health").

Finally, it also is clear that any business losses alleged by NewChops were "caused by or resulting from" Coronavirus.  NewChops alleges that it "shut its doors" and ceased operations "[i]n light of the Coronavirus global pandemic and state and local orders mandating that restaurants not permit in-store dining."  Compl. ¶ 2.  It broadly acknowledges that Governor Wolf's March 6, 2020 state of emergency declaration was "the first formal recognition of an emergency situation in the Commonwealth *as a result of COVID-19*."  Compl. ¶ 25 (emphasis added).  The Complaint similarly cites to and relies on various orders issued by Governor Wolf and Mayor Kenney, *all* of which point to COVID-19 as the reason for entry of the orders.  *See* Mayor Kenney Order of Mar. 16, 2020 (ordering the closure of certain businesses "*in order to reduce the spread of the COVID-19 novel coronavirus* in Philadelphia");[6] Gov. Wolf Order of Mar. 19, 2020 (requiring closure of

---

[6]   www.phila.gov/2020-03-16-city-announces-new-restrictions-on-business-activity-in-philadelphia/ (emphasis added) (last visited May 30, 2020).

certain businesses in order "to help *stop the spread of COVID-19*");[7] Mayor Kenney Order of Mar. 22, 2020 (Compl., Ex. 3 at 2) (requiring closure of certain businesses "in order to limit *the spread of COVID-19.*" (emphasis added)); Gov. Wolf Orders of Mar. 23 and Apr. 1, 2020 (Compl., Exs. 4 & 6 at 1) (requiring closure of certain businesses as the "most efficient and practical means for the prevention and suppression of disease").  Thus, irrespective of how plaintiff characterizes its losses or claims, they fall squarely within the broad scope of the exclusion.[8]

This Court has upheld similarly unambiguous exclusions barring coverage for losses caused by hazardous substances or microorganisms.  For example, in *Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464 (E.D. Pa. 2015), the court enforced an exclusion for fungi, bacteria and virus against claims for bacterial infections resulting from certain surgeries.  *Id.* at 472 (enforcing exclusion of coverage for "[i]njury or damage arising out of or related to the presence of, suspected presence of, or exposure to fungi, bacteria and virus" based on showing that Group A Strepococcus is a bacterium); *see also Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (policy's "microorganism exclusion" precluded coverage for the cost of remediating bacteria that escaped from a decomposed body at the insured's apartment building); *Alea London Ltd. v. Rudley*, No. Civ.A. 03-CV-1575, 2004 WL 1563002, at

_____

[7] www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (emphasis added) (last visited May 30, 2020).

[8] Indeed, coverage under the various coverage grants of the Policy must be caused by direct physical loss of or damage to property "caused by or resulting from a Covered Cause of Loss," defined as "Risks of Direct Physical Loss."  *See* Ex. 1 at 56-57 (Form CSMS 00 30 01 14); *id.* at 68 (Form CSMR 10 30 01 1).  The Virus Exclusion, added by endorsement to the Policy, removed viruses as a Covered Cause of Loss or covered risk.

*3 (E.D. Pa. July 13, 2004) (mold exclusion bars coverage for suit alleging mold contamination). Other courts are in accord.[9]

No doubt anticipating this motion, plaintiff's Complaint mentions the Virus Exclusion in passing, noting without elaboration that "[t]he Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here."  Compl. ¶ 19.  But, as the Supreme Court has counseled, this type of bare assertion – couching erroneous legal conclusions as fact – is insufficient to avoid dismissal.  *Twombly,* 550 U.S. at 555.  "A court must give effect to the plain language of the insurance contract read in its entirety."  *Cont'l Cas. Co. v. County of Chester,* 244 F. Supp. 2d 403, 407 (E.D. Pa. 2003).  The Virus Exclusion is clear and unambiguous and fully applies to losses caused by or resulting from COVID-19.  No other conclusion can be reached but that plaintiff's claims for insurance coverage based upon COVID-19 losses are excluded.

### B. The Policy's "Civil Authority" Coverage Does Not Apply Because The Civil Authority Orders Do Not Prohibit Access To The Insured Premises

The Policy's Civil Authority coverage grant explicitly requires an action of civil authority to prohibit access to the described (or insured) premises.  Courts have held that the word "prohibit"

---

[9] *See, e.g.*, *Koegler v. Liberty Mut. Ins. Co.,* 623 F. Supp. 2d 481, 484 (S.D. N.Y. 2009) (virus exclusion in policy was "so obvious," "couched in plain English and not at all difficult to understand" such that insurer should have known to deny coverage under exclusion); *Int'l Servs. Corp.*, No. 13-662, 2014 WL 6460844, at *13 (E.D. La. Nov. 17, 2014) (bacteria/virus exclusion in commercial liability policy bars coverage for legionella claims against hotel); *Lambi v. Am. Mut. Ins. Co.,* No. 4:11-cv-906, 2012 WL 2049915, at *4-5 (W.D. Mo. June 6, 2012) (communicable disease exclusion in homeowners policy barred insurance coverage for virus claims), *aff'd,* 498 F. App'x 655 (8th Cir. 2013); *Ace Am. Ins. Co.*, No. 07-3749, 2008 WL 4091013, at *5 (E.D. La. Aug. 29, 2008) (mold, mildew, fungi and other similar organism exclusion bars mold property damage claims); *Clarke v. State Farm Fla. Ins.*, 123 So. 3d 583, 585 (Fla. Dist. Ct. App. 2012) (virus  encompassed within exclusion for any disease or virus transmittable from the insured to another person excluded under policy); *Tate v. One Beacon Ins. Co.*, 328 S.W.3d 262, 266 (Mo. Ct. App. 2010) (spore, bacteria and virus exclusion precludes coverage for bodily injury claims arising from mold exposure).

in this context is unambiguous and means "to forbid by authority or command" or words to that effect. *Paradies Shops, Inc. v. Hartford Fire ins. Co.,* No. 1:03-CV-3154, 2004 WL 5704715, at *1-2, 6 (N.D. Ga. 2004); *see also S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1139-41 (10th Cir. 2004) (holding the terms "prohibit access" unambiguous and means "formally forbid" or "prevent").  Importantly, however, a civil authority order restricting, limiting, hindering or regulating access to property is not enough; the prohibition must make it impossible to access the insured's property.[10]

Plaintiff cannot meet this burden. The Governmental Orders on which NewChops relies did not even require NewChops to shut down its business, much less prohibit access to the insured premises.  All of the orders limited in-person dining but specifically provided that restaurants could provide take-out and delivery service to customers.  *See* Section II.A (detailing terms of civil orders).  NewChops's decision not to remain open under the terms permitted by the Governor and Mayor is not a prohibition of access to the restaurant.

---

[10] *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 336 (S.D.N.Y. 2004) (insured was entitled to civil authority coverage only during time it was denied all access to premises and not during times when employees could access insured property on foot or using public transit even though streets were closed to vehicular traffic); *Commstop v. Travelers Indem. Co. of Conn.*, No. 11-1257, 2012 WL 1883461, at *9 (W.D. La. May 17, 2012) (insured seeking civil authority coverage was "required to put forward evidence showing access to its convenience store was totally and completely prevented – i.e., made impossible – by the road replacement program"); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-cv-2391, 2010 WL 2696782, at *4-5 (M.D. Pa. July 6, 2010) ("[W]here the action of a civil authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action is not covered"); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 06-770-C, 2007 WL 2489711, at*3-4 (M.D. La. Aug. 29, 2007) (no civil authority coverage "unless the action of civil authority actually and completely prohibited access to the insured premises"); *Paradies Shops*, 2004 WL 5704715, at *5 (no civil authority coverage for owner of airport shop because access to airport stores was not "specifically prohibited" by the FAA's order that grounded flights after the September 11 terrorist attacks).

**C.     The Civil Orders Were Issued to Prevent the Future Spread of Coronavirus (COVID-19), Not Because of Damage to Property**

The Civil Authority coverage also requires plaintiff to demonstrate that the Governmental Order prohibiting access was issued "as a result of" damage to other property within one mile of the insured premises, and further that the Order was issued in response to "dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." Ex 1 at 57 (Form CSMR 00 30 01 14). As many courts have held, this provision amounts to nothing less than a causation requirement, obligating the policyholder to prove that a civil order was issued because of actual and prior property damage and not because of fear of, or efforts to avoid, future damage.[11] Such limitations make perfect sense given that insurers generally do not underwrite risks untethered to actual property damage in commercial property policies.

The Second Circuit's analysis in *United Air Lines v. Insurance Company of the State of Pennsylvania*, 439 F.3d 128, 134 (2d Cir. 2006), is instructive. In that case, the Court held that any prohibition of access to premises at Ronald Reagan National Airport after the September 11 attacks was not covered by civil authority insurance because the evidence "indicates, not

---

[11] *See, e.g.*, *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011) (holding that civil authority coverage "requires proof of a causal link between *prior damage* and civil authority action"); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-cv-00693-SAL, 2020 WL 886120, at *4 (D.S.C. Feb. 24, 2020) ("reading the Civil Authority section as a whole, it is clear that it was not written with the expectation that a civil authority order would issue before the property damage that forms the basis of the order actually occurs); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:10-cv-54, 2011 WL 13214381, at *6 (E.D. Tex. Mar. 30, 2011) (evacuation orders issued in preparation for Hurricane Ike did not trigger civil authority coverage because they were due to the anticipated threat of future damage and not property damage that had already occurred), *report and recommendation adopted*, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011); *Jones, Walker, Waechter, Poitevant, Carrere & Denegre*, No. 09-6057, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010); ("Reading the Civil Authority section as a whole, it is clear that it was not written with the expectation that a civil authority order would issue before the property damage that forms the basis of the order actually occurs.").

surprisingly, that the government's . . . decision to halt operations at the Airport indefinitely was based on fears of future attacks," and not on prior physical damage. *Id.* As the court noted, a civil authority order "designed to prevent, protect against or avoid future damage" does not entitle an insured to coverage. *Id.*; *Dickie Brennan,* 636 F.3d at 686-87 (evacuation order issued in New Orleans because of approaching hurricane insufficient to trigger civil authority coverage where no evidence of prior property damage in vicinity of insured property damage).

Plaintiff's Complaint fails to provide plausible facts that the Government Orders were issued as a result of damage to nearby property and in response to "dangerous physical conditions," as required by the Policy. Nor could it, given the plain wording of the orders at issue. The Governmental Orders expressly state, as their purpose, a desire to limit transmission of COVID-19 by imposing social distancing and other density reductions. None of the Orders identifies physical damage to property occurring at any specific location, much less at property within one mile of plaintiff's insured premises, as required by the Policy. *See* Governor Wolf Proclamation of Disaster Emergency of March 6, 2020 (Compl., Ex. 2 at 1) (declaring emergency to the "health of the citizens" of Pennsylvania and need to "implement measures to mitigate the spread of COVID-19");[12] Mayor Kenney Order of Mar. 22, 2020 (noting that "preventing unnecessary close contact of individuals is an effective way to mitigate the spread of communicable diseases," ordering certain closures "*in order to limit the spread of COVID-19,*" but allowing essential

---

[12] *See also* Governor Wolf Order of Mar. 19, 2020 (noting that "isolation, quarantine and any other control measures" can be used for the "prevention and suppression of disease," and requiring closure of restaurants and bars "*to help stop the spread of COVID-19,*" but allowing carry-out, delivery and drive-through services so long as "social distancing and other mitigation measures are employed"). www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (emphasis added) (last visited May 30, 2020).

businesses to operate with social distancing rules).[13]   Social distancing and shut-down orders issued to contain transmission of the virus are akin to prevention or prophylactic measures that simply do not trigger Civil Authority coverage.

### D.   NewChops Has Not Alleged Physical Loss Of Or Damage To Its Own Property Or Nearby Property Caused By A Covered Cause of Loss

Lastly, the requirement of direct physical loss of or damage to property is a standard element of property policies, one that lies at the heart of what risks insurers elect to cover and without which there can be no coverage.  In its Complaint, NewChops has not alleged any physical loss of or damage to its own property, much less damage to any property within one mile of its restaurant.  To the contrary, it bears repeating that plaintiff candidly admits it "does not seek any determination of whether the Coronavirus is physically in or at the Insured Property . . ."  Compl. at ¶ 48.  Thus, whether the presence of microorganisms, such as Coronavirus, on property would constitute a direct physical loss or not under the Policy is not before the Court because there are utterly no allegations that any physical damage of any kind has occurred either to NewChops's premises or to property within a one-mile radius.  That omission, alone, is fatal to NewChops's claim for coverage.

In first-party property policies, the "requirement that the loss be 'physical,' given the ordinary definition of the term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against a property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A *Couch on Insurance* § 148.46 (3d ed. 1995).  As many courts have held, the

---

[13] The fact that essential businesses were allowed to operate and that restaurants were permitted to continue operations for carry-out and drive-through further underscores that the orders were aimed at limiting risk of community spread and not because of property damage.

requirement of "physical" loss or damage connotes a structural change to the insured property.[14] Indeed, the Policy's business income coverage lasts for the "period of restoration," which ends when the damaged insured property "should be repaired, rebuilt or replaced." Ex.1 at 66. As one court correctly observed, these terms "strongly suggest that the damage contemplated by the Policy is physical in nature." *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005).

The Third Circuit has held that direct physical loss can occur without physical alteration of the property's structure, but, importantly, it has limited this holding solely to cases where a hazardous substance actually contaminates the *property* and renders it "uninhabitable and unusable." *See, e.g.*, *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (applying New Jersey law) ("[I]f asbestos is present in components of a structure, but is not in such form or quantity as to make the building unusable, the owner has not suffered a loss."); *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed App'x 823 (3d Cir. 2005) (applying Pennsylvania law) (finding test for coverage is whether functionality of property was nearly eliminated or destroyed or property made useless or uninhabitable as a result of e. coli

---

[14] *See Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n,* No. 90-35654, 1992 WL 16749, at *1 (9th Cir. Jan. 31, 1992) (agreeing with district court's conclusion that "contamination of [policyholder's] building with asbestos was an economic loss and not a physical loss [because] the building remained physically unchanged"); *Universal Image Productions, Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 711-12 (E.D. Mich. 2010) (mold and bacteria contamination in a building did not constitute direct physical loss or damage because no part of the building's structure was altered), *aff'd*, 475 F. App'x 569 (6th Cir. 2012); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (restaurant did not suffer direct physical loss or damage when dust and debris from nearby roadwork did not alter the building's structure and could be remediated by regular cleaning of the premises); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144-45 (Ohio Ct. App. 2008) ("physical injury" meant "a harm to the property that adversely affects the structural integrity of the house," and stains to wood siding caused by mold did not qualify because the mold did not change the siding's physical structure and the stains could be washed off).

contamination).[15]   NewChops does not even attempt to satisfy these stringent pleading requirements.  The Complaint essentially concedes, for all practical purposes, that NewChops's property is not contaminated.  And, the Governmental Orders cited in the Complaint do not identify any "contaminated" property whatsoever nor require evacuation of any property because it is uninhabitable or unusable.  Indeed, whether a business could remain open under the orders turned not on whether Coronavirus was present or whether a property was physically damaged, but on whether the business's operations fell into one of the many exceptions to the closure orders for businesses providing an essential service.[16]  *See* Section II.A, *supra*.

In short, the Admiral Policy only covers business income or other losses if plaintiff's suspension of operations is caused by direct physical loss of or damage to either its own property or property within one mile of the insured property, which results in issuance of a civil authority order wholly prohibiting access to the insured property.  NewChops's complaint alleges no such damage and allegations of economic loss resulting from Governmental Orders designed to curb

_____

[15] Thus, in *Port Authority*, the court concluded that the "mere presence of asbestos in a building or the general threat of its future release" was insufficient to constitute physical damage. 311 F.2d at 236.  Noting that in "ordinary parlance and widely accepted definition, physical damage to property means a distinct, demonstrable and physical alteration of structure," the court concluded that alleged physical damage by "substances unnoticeable to the naked eye must meet a higher threshold." *Id.*

[16] At least one court, applying New York law, has already rejected policyholder arguments that fear of transmission or efforts to control the spread of COVID-19 can displace requirements that a policyholder plead and prove direct physical damage to property. *See Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC) (S.D.N.Y.).  In denying a motion for preliminary injunction by a policyholder seeking business income coverage, the court determined that the insured could not demonstrate a likelihood of success on the merits.  As the court noted to the policyholder, "New York law is clear that this kind of business interruption needs some damage to property to prohibit you from going [to the property]."  Transcript of May 14, 2020 at 15 (attached hereto as Exhibit 2).  Finding that the virus damaged people and not property and that no plausible allegations of property damage had been made, the court denied the motion on the grounds that "this is just not what's covered under these insurance policies."  *Id.*

19

transmission of the virus are no substitute for this critical ingredient.  Under *Twombly* and *Iqbal*,

the absence of  "sufficient factual matter" "to state a claim to relief that is plausible on its face,"

requires entry of judgment as to Admiral.  *Iqbal*, 556 U.S. at 678.

     **E.**     **The Policy's "Business Income" Coverage Does Not Apply to NewChops's Claim**

Plaintiff's claim is almost entirely focused on obtaining Civil Authority coverage.  At the

end of its Complaint, however, NewChops makes a half-hearted effort to obtain a "declaration that

the Policy provides business income coverage *in the event* that Coronavirus has directly or

indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the

Plaintiff's Insured Property."  Compl., Prayer for Relief (5) (emphasis added).  The Civil Authority

claim has already been dispensed with in the preceding sections of this brief.  As to potential

coverage for damage to plaintiff's own premises, that presumed afterthought rests wholly on

speculation and fares no better than plaintiff's claim for Civil Authority coverage.

The Policy's Business Income coverage grant provides in pertinent part as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.  The loss or damage must be caused by or result from a Covered Cause of Loss.

Ex.1 56 (Form CSMR 00 30 01 14).

Thus, Business Income coverage requires a suspension of operations "caused by direct

physical loss of or damage to property" at the policyholder's premises.  Even if the presence of

Coronavirus could constitute "direct physical loss of or damage to" property – a point Admiral

disputes – NewChops's disavowal that Coronavirus was present at its restaurant strips this

argument of any force.  Courts, of course, are not free to issue advisory opinions or to speculate

about potential claims that are not asserted in the complaint and supported by well-founded facts. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts").

Moreover, even if NewChops had presented plausible facts in support of direct physical loss of or damage to its own premises, the Virus Exclusion would plainly bar any claim for resulting Business Income coverage. For business income coverage to be triggered, the "loss or damage" to the insured's property must be "caused by or result from" a Covered Cause of Loss, here the Coronavirus. Ex. 1 at 56 (Form CSMR 00 30 01 14). The Virus Exclusion, however, precludes coverage for the same loss or damage "caused by or resulting from any virus," and unambiguously applies to "forms or endorsements that cover business income." Ex 1 at 79, ¶¶ A, B (Form CP 01 40 07 06). Thus, in order to bring a claim within the Policy's Business Income grant of coverage, NewChops would have to allege the very same facts that also bring its claim squarely within the scope of the Virus Exclusion.

NewChops cannot have it both ways and argue, on the one hand, that the virus caused its loss, but on the other, that the Virus Exclusion, which bars coverage for losses caused by viruses, does not apply. Even based upon these "hypothetical" facts, there is no warrant in the Admiral Policy to provide business interruption coverage to plaintiff.

## V.   CONCLUSION

For the foregoing reasons, this Court should grant Admiral's Motion for Judgment on the Pleadings and direct the Clerk to enter final judgment in Admiral's favor.

Respectfully Submitted,

**GOLDBERG SEGALLA LLP**

Date: June 5, 2020                    /s/ *Eric A. Fitzgerald*
                                      Eric A. Fitzgerald, Esquire
                                      Attorney ID No.: 72590
                                      Hillary N. Ladov, Esquire
                                      Attorney ID No.: 315833
                                      1700 Market Street, Suite 1418
                                      Philadelphia, PA 19103
                                      267-519-6800
                                      efitzgerald@goldbergsegalla.com
                                      hladov@goldbergsegalla.com

                                      Antonia B. Ianniello (pro hac vice pending)
                                      John F. O'Connor (pro hac vice pending)
                                      STEPTOE & JOHNSON LLP
                                      1330 Connecticut Avenue, N.W.
                                      Washington, D.C. 20036
                                      202-429-3000
                                      aianniello@steptoe.com
                                      joconnor@steptoe.com

                                      *Attorneys for Defendant*
                                      *Admiral Indemnity Company*

## CERTIFICATE OF SERVICE

I certify that on this 5th day of June, 2020, I caused a true copy of the foregoing to be filed with the Court's CM/ECF system, which automatically serves a copy on the below-listed counsel of record:

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
GOLOMB & HONIK, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103

Arnold Levin, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
LEVIN SEDRAN & BERMAN, L.L.P.
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697

/s/ *Hillary N Ladov*
Hillary N. Ladov